29 C.C.P.A.(Patents)

### In re MALCOM.

### Patent Appeal No. 4582.

Court of Customs and Patent Appeals.

June 15, 1942.

George W. Mills, Jr., of Lockland, Ohio (Albert F. Robinson, of Lockland, Ohio, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals affirming that of the Primary Examiner denying patentability, in view of the prior art, of all of the claims, 2 to 13 inclusive and 21, in an application for a patent alleging new and useful improvements in "Paving Joint Construction".

Claims 10 and 13 are illustrative of the appealed claims, and read as follows:

"10. A load transmitting unit comprising an elongated base member having a socket and oppositely disposed flanges to provide a back support for expansion joint material and a spacing for concrete slabs, an elongated plate having one longitudinal edge seated within the socket and the opposite longitudinal edge projecting beyond the socket, shearable means in the socket for fixedly holding the base and plate assembled as a unit, and a stake means non-fixedly associated with the unit for holding same supported upon the edge of one of the flanges."

"13. In a paving structure comprising paving sections, a load transmitting device between the sections comprising an elongated base member provided with a socket and a flange vertically disposed from the socket to the surface to be paved for seating the base member and separating the sections on a vertical line, an elongated plate extending widthwise of the paving between adjacent sections having one edge fitted within the socket of the base member and the opposite edge secured to the end of an adjacent section, shearable means projecting through the base member and the plate for locking said plate and base member together, and means readily attachable

to and detachable from the device for securing same in position."

The references relied upon are:

Proceedings of American Concrete Institute, Vol. XX, 1924, pages 624 and 625.

Concrete, January 1935, page 8.

Hall, 2,016,858, October 8, 1935.

McCrady, 2,096,254, October 19, 1937.

The alleged invention as described in the specification is as follows:

"This invention relates to a paving or flooring construction having a joint unit provided between spaced apart sections or slabs, and particularly pertains to a joint unit which provides for transmitting load from one paving section to another over the joint space by means of a member or members associated with the adjacent ends of the paving or flooring sections. A filling means may also be inserted in the space between the sections to provide for contraction and expansion.

"Generally described the invention comprises a load transmission device adapted to be made up, shipped and installed in the flooring or paving with part or all the elements assembled as a unit except perhaps the joint filler and the staking means. The stake device may be conveniently employed for securing the load transmitting unit in position on the foundation to be paved and held in place until the concrete material is poured into place between the joint separating means provided longitudinally or transversely at spaced intervals along the distance to be paved. The joint filling means may be in the form of preformed strips or poured in place after the paving is laid, temporary molding means being employed as a support for the end of the concrete section adjacent to that end of the section in which the holding device for the load transmitting means is associated with."

As appearing in the record, the Proceedings of the American Concrete Institute reference consists only of drawings, without detailed written explanation, of a joint structure between slabs of pavement, comprising a sheet metal member extending across the width of the pavement from almost the top to not quite the bottom thereof. In the middle of said member, and at right angles thereto, the said member is of such form that a socket or sheath is provided in one of the slabs into which passes a flat metal plate, which extends into the adjoining slab. The sheath in one of the drawings projects into a cylindrical tube, through the periphery thereof. The tube is packed with filler. The sheath between the socket and the joint appears to show a rivet passing through both the socket and plate. The space in the joint above and below the plate contains conventional filler.

The Concrete reference discloses a metal air cushion expansion joint between slabs of concrete pavement. In one of the figures there is shown between the ends of the slabs a cross-like structure comprising metal walls. The longitudinal portion appears to extend down to the surface to be paved and horizontal members penetrating the adjacent slabs form a sheath or socket into which passes a steel dowel plate shorter than said sheath.

The patent to Hall relates primarily to joints in concrete road construction in which there is a joint plate extending down to the bed of the pavement and providing for stakes to hold the structure in place.

The patent to McCrady relates particularly to structure for installing joints which divide a pavement into slabs. A joint plate structure is shown in the drawings extending down to the surface to be paved and there is provided a stake to hold the device in place.

The basic reference relied upon below is the Proceedings of the American Concrete Institute, the other references being relied upon to show that the differences between the structure of the application and those appearing in the basic reference were old in the art and not of such a character as to involve invention.

The principal issue here, as it was below, is whether or not the claims on appeal are patentable over the references.

The limitations contended by appellant to render the claims on appeal patentable over the prior art appear to be the "shearable means in the socket for fixedly holding the base and plate assembled as a unit", "the stake means non-fixedly associated with the unit" and "the elongated base member * * * vertically disposed from the socket to the surface to be paved".

The "shearable means" mentioned in several of the claims refers to a rivet of soft metal, extending through cooperating holes in the socket or sheath portion of the base structure, and the dowel plate extending therein which are of harder metal. When due to movements of contraction or expansion in the pavement joint the dowel plate would slide forwardly or backwardly in the

sheath, the said holes would be moved out of cooperating relationship and thus shear the softer metal of the rivet.

No rivet or shearing means of any kind is designated by name or written description in any of the references. In the basic reference however, in all of the figures, there appears to be a rivet as hereinbefore noted in the description of that reference. That the paving joint illustrated there provides for contraction and expansion is not here questioned. Therefore we are of opinion, as were the tribunals below, that the drawings disclose a rivet. Otherwise there could be no contraction or expansion in the joint. Whether or not the rivet is shearable does not appear to be of consequence to us, with respect to contraction or expansion, for the reason that it might be fixed rigidly to the sheath of the member and cooperate with a slot in the closely fitted dowel plate.

Appellant does not contend that the basic reference does not disclose a rivet. He states in his brief that the drawings are not clear in that respect and that what has been held to be a depiction of a rivet might be a beading strip, a weld spot, a clamp or a rivet. If it were any of the alternatives to a rivet as suggested by appellant the joint could not be subject to contraction or expansion.

It is of interest to note that prior to the prosecution of this case, the present application was in an interference in which certain claims of the application not here involved were counts. The interference seems to have been on the broad concept of invention involving the dowel plate, socket member and rivet means for holding the plate and socket together. Some of those counts expressly showed a rivet. The interference was dissolved upon motion of appellant alleging the counts to be unpatentable over the basic reference here. With respect to the attitude of appellant in his motion to dissolve, the board in this appeal stated as follows: "Appellant notes that there is some doubt that what appears in the Proceedings of the Institute (Fig. 1) is a rivet. There can be no doubt as to appellant's position on the motion to dissolve since claims 14 [15] and 18 of the issue of the interference refer to a rivet."

In holding the rivet of the basic reference here to be shearable the Examiner stated as follows: "Applicant has amended claims 5, 6, 7, 8, 9 and 10 by indicating that the rivets 13 are shearable. It is contended that the rivets in Fig. 2 of the Concrete Institute citation must necessarily also be shearable otherwise the device would not be operative because movement of the slabs would be impeded or prevented. It is reasonable to assume that the rivet in the reference is shearable because otherwise the arrangement would be inoperative and in view of conclusive evidence to the contrary it should be presumed that it is operative."

The Board of Appeals pointed out in its decision that it could not tell from the record "whether the rivets of the Proceedings Article (Fig.) are shearable or not." Continuing, the board said:

"However, it is only an expedient to make a connection shearable and we see no invention in this feature. Furthermore, we believe that the rivets of the Proceedings Article are adapted to be sheared * * *.

"Claims 10 and 11 state that the shearable means holds the parts fixedly assembled. There would be an advantage in handling the device if the rivet held the parts fixed but we do not regard this feature as anything but a mechanical expedient. It is a matter of common knowledge to fix parts together by shearable pins, screws and the like."

Appellant petitioned the board for reconsideration of its decision and also requested "proof of fact under Rules 66 and/or 76 as to what is stated in said decision to be common knowledge". Ruling on the request the board stated: "We do not believe it is necessary for us to cite references showing a shearable connecting pin since the result of such a connection is obvious, that is, the connection will break. The use of such a connection is, in our opinion, no more than a workshop expedient which produces only what would be expected, i.e. a broken connection affording relative movement."

In his reasons for appeal appellant alleges error in the refusal of the board "to cite a reference or give an affidavit of fact in proof of a statement of alleged common knowledge". We do not think that Rules 66 and 76 of the Rules of Practice in the Patent Office, 35 U.S. C.A. Appendix, embrace within their scope matters of common knowledge. Those rules apply to rejection of claims on facts within the personal knowledge of an employee of the Patent Office. There is a wide difference between facts which are

commonly known and those which are personally known possibly to many but not so generally known as to come within the meaning of common knowledge. One may have personal knowledge of matter which can also be commonly known. In such a situation however, in patent law, it could not be held that the matter is a personal knowledge requiring on the part of the tribunals of the Patent Office proof in accordance with said rules.

That matters of common knowledge may be judicially noticed is a doctrine long and well established. Brown et al. v. Piper, 91 U.S. 37, 23 L.Ed. 200. This doctrine does not require actual present knowledge on the part of the judicial authority. As was well stated in the case of Ball v. Flora, 26 App.D.C. 394, cited in the Solicitor's brief: "The process of taking judicial notice does not necessarily imply that the judge at the moment actually knows and feels sure of the truth of the matter submitted; it merely relieves the party from offering evidence because the matter is one which the judge either knows, or can easily discover."

In the instant case the members of the Board of Appeals may have had personal knowledge of what they held to be common knowledge, but that in our opinion does not create a situation where an affidavit could be required of them, because in that event they would divest themselves of their proper power to take judicial notice of facts of common knowledge.

While the mere statement that certain facts are of common knowledge does not put them in that category, it is plain to us that the holding of the board that "It is a matter of common knowledge to fix parts together by shearable pins, screws and the like" is correct. It is common knowledge, for instance, that a chain is no stronger than its weakest link; that fuses are placed in electrical current systems to "blow" when too heavy an electric load is imposed, and that generally in the field of mechanics weaker elements are placed in mechanisms to save damage to more important and costly parts if there should be strains or loads more than can be safely borne. Therefore we are of opinion that the board did not err in declining to present proof on what is common knowledge, even though such knowledge was also personal to its members.

While the basic reference does not disclose a stake, it is old in the art to use a stake as is shown by either the Hall or McCrady references and in our opinion it would not require invention to use a stake as shown by those references in the structure of the basic reference.

The use of shearable rivets, as shown by the claims on appeal, is of common knowledge. The base flange extending to the top of the surface to be paved we do not think lends patentability to said claims, as such construction is clearly shown by the patent to Hall and the Concrete reference. The use of both elements would be obvious to one skilled in the art.

The decision of the Board of Appeals is affirmed.

Affirmed.